UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALAN PAWELSKY and ACE AUTO RECYLCING, INC.,

Plaintiffs,

-against-

COUNTY OF NASSAU, NEW YORK, NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY POLICE DEPARTMENT PROPERTY CLERK, DETECTIVE JAMES TOBIN SHIELD No. 1285, Individually, and in his Official Capacity, DISTRICT ATTORNEY ANNE DONNELLY, Individually, and in her Official Capacity, ASSISTANT DISTRICT ATTORNEY ABIGAIL MARGULIES, Individually, and in her Official Capacity, COUNTY EXECUTIVE BRUCE BLAKEMAN, Individually, and in his Official Capacity, NASSAU COUNTY POLICE COMMISSIONER PATRICK RYDER, Individually, and in his Official Capacity, NASSAU COUNTY POLICE OFFICERS/DETECTIVE INVESTIGATORS "JOHN DOE" #1-50, Individually, and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

Defendants.

**MEMORANDUM & ORDER**
**23-CV-3237 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are (1) Plaintiffs' emergency request for a preliminary injunction, filed on April 28, 2023, (Unsigned Order to Show Cause (Dkt. 9); Decl. re: Order to Show Cause ("Initial Decl.") (Dkt. 10); Mem. Of Law in Supp. Of Order to Show Cause ("Initial Mem. of Law") (Dkt. 11)), (2) Plakos Scrap

1

Processing, Inc.'s ("Plakos's") Motion for Leave to Intervene ("Plakos Mot.") (Dkt. 41), (3) C&R Auto Motors & Recycling Inc.'s ("C&R's") Motion for Leave to Intervene ("C&R Mot.") (Dkt. 49), and (4) Defendants' Motion for a Pre-Motion Conference ("PMC Ltr.") (Dkt. 55).

## I.   BACKGROUND

### A.   Factual History[1]

The Complaint describes, at length, Plaintiff Pawelsky's humble origins, and the way in which he worked hard to build the business he now alleges has been wrongfully seized. (Compl. (Dkt. 1) ¶¶ 25-61.) In its current form, Ace Auto Recycling, Inc. ("Ace Auto") is engaged primarily in the business of recycling of catalytic converters—both through buying catalytic converters to recycle, and by serving as a broker and assayer for other holders of catalytic converters seeking to sell the precious metals found within. (*Id.* ¶¶48-52.) Plaintiffs attribute much of Ace Auto's success in recent years to (1) its business relationship with a company known as "Stillwater" to whom it shipped materials and, (2) becoming a broker for other scrap metal holders looking to assay their catalytic converters. (*Id.* ¶¶ 53-56.) Plaintiffs assert that they required all customers to attest that their goods were not stolen. (*Id.* ¶¶ 57-60.)

The Complaint also highlights the importance of the metal recycling industry in America—as a mode of reducing greenhouse gases, reducing waste, preserving natural resources, generating

---

[1] In considering the instant application for a preliminary injunction the court "may consider the entire record including affidavits and other hearsay evidence," *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F.Supp. 3d 270, 282 (E.D.N.Y. 2021), as well as from the operative complaint. The factual history set forth below thus draws freely from the record before the court.

billions of dollars of revenue, and employing over 150,000 work-
ers. (*Id.* ¶ 62-66.) It also sets forth a detailed explanation of the
value of catalytic converter recycling—as a way to reduce air pol-
lution, preserve precious metals and thus prevent the damage
associated with excess mining/extraction of new precious metals,
and lower the cost of catalytic converters for consumers. (*Id.* ¶
69-77.)

Plaintiffs allege first that on or about December 13, 2022 Defend-
ant Nassau County Police Department ("NCPD"), at the direction
of Defendants Ryder, Donnelly and/or Margulies, wrongfully ob-
tained search warrants for Pawelsky's computer, pickup truck,
home, cell phone, and Ace's Auto yard, after providing false
and/or misleading information to the state court judge issuing
the warrants. (*Id.* ¶¶ 78-80, 84.) This false and/or misleading in-
formation purportedly included statements that "Plaintiffs had
knowingly purchased and sold stolen catalytic converters" and
had stolen catalytic converters currently in their possession, all
as "part of a large criminal organization engaged in knowingly
buying and selling catalytic converters and their component
parts." (*Id.* ¶¶ 81-83.)

On or about December 14, 2022, the Defendants "essentially
seized the entirety of Plaintiff Pawelsky's recycling business Ace
Auto Recycling[.]" (*Id.* ¶ 85.) Plaintiffs initially alleged that the
following materials were seized:[2]

    1.  $3,269,708.16 from a Signature Bank Account;

---

[2] A seizure inventory was provided to Pawelsky as required, after execution
of the warrants. (*See* Ex. 3 to Initial Decl. (Dkt. 10-3) ("Seizure Inven-
tory").) Other items listed on the Seizure Inventory but not in the
Complaint include a "rifle" and a "bug detector." (*Id.* at 3.)

2. All catalytic converters and various documents from Ace Auto's address at 4336 Industrial Place;

3. All catalytic converters, raw materials, automobiles, and various processing and other business equipment from Ace Auto's address at 20C Industrial Place;

4. $3,900,000 in Federal Reserve U.S. Currency from Pawelsky's home at 424 West Park Avenue;[3]

5. A 2021 Model 2500 GMC Denali;

6. A 2022 Mercedes 3500 Sprinter Van from 20C Industrial Place;

7. A cell phone belonging to Ace Auto;

8. A computer that "contained nearly all of Ace Auto's business records."

(*Id.* ¶ 86.) The search warrants permitted only seizure of *stolen* catalytic converters and related items, yet according to Plaintiffs, Defendants seized *all* materials from Plaintiffs' properties without trying to ascertain which were stolen, including assay lot materials that did not belong to Plaintiffs, and destroyed expensive business machinery by cutting it out from the wall. (*Id.* ¶¶

---

[3] According to the Seizure Inventory, this cash was found in a suitcase and a Trader Joe's shopping bag. (Seizure Inventory at 3.) According to Plaintiffs, that cash was in "Federal US Reserve currency bags delivered from Signature Bank." (Ps' Supp. Brief (Dkt. 42) at 2 n.1)

87-91.) In a later filing, Plaintiffs also allege the seizure of $4,300,000 from Stillwater, paper business records necessary for Ace Auto to file taxes, money belonging to Pawelsky's parents, and a safe from Pawelsky's parents' home which contained a knife collection. (Ps' Supp. Brief at 2-3, 3 n.4.)

Unsurprisingly, the Defense tells a different story about the warrants. According to Defendant Tobin, a Detective with the NCPD, "[o]n or about December 14, 2022, the NCPD executed search warrants approved by the New York Supreme Court against Alan Pawelsky and Ace Auto Recycling, Inc., and seized numerous items, including (i) a significant number of catalytic converters; (ii) machines used to retrieve precious metals from a catalytic converter; (iii) a 'bug detector' for locating hidden audio or video recording devices; (iv) at least three cell phones, which is consistent with the use of burner phones; and (v) $3.86 million in cash, including cash located in bank-sealed bags, suitcases, and paper bags." (Tobin Decl. (Dkt. 47) ¶ 3.) Finally, Defendant Tobin attests that "Defendants have no record of any knife collection being seized or in their possession." (*Id.* ¶ 4.)

Plaintiffs assert that at a December 19, 2022 meeting, the NCPD and the Nassau County District Attorney's Office ("Nassau County DA") admitted that they were "still trying to figure [] out" whether any of the confiscated property was stolen. (*Id.* ¶¶ 93-95.) Plaintiffs also argue that their business records clearly document their suppliers and indicate that all of their inventory was lawfully obtained. (*Id.* ¶¶ 96-97.)

Plaintiffs further allege that the Defendants held "multiple press conferences falsely telling the public that Plaintiffs were buying and selling stolen catalytic converters" as part of "criminal organizations . . . profiting on a large scale." (*Id.* ¶¶ 98-100.) At these press conferences, Defendants displayed catalytic converters seized from Ace Auto, claiming the converters were stolen, though Plaintiffs allege they were not. (*Id.* ¶¶ 104-06.) Plaintiff

Pawelsky had not been arrested and no charges had been brought against Ace Auto at the time the Complaint was filed. (*Id.* ¶ 107.) Moreover, Plaintiffs allege that Defendants possess exculpatory information from wire tapped phone conversations in which Pawelsky went out of his way to "ensure Ace Auto avoided dealing with companies that might trade in stolen catalytic converters." (*Id.* ¶¶ 109-12.)

On February 7, 2023, Plaintiffs wrote, through two different attorneys, letters to the Nassau County DA, the NCPD, the NCPD Property Clerk, and the County Attorney's Office demanding that the property be returned. (*Id.* ¶ 124; Defs' Supp. Opp. (Dkt. 44) at 8; Ex. 6 to Giuffra Decl. (Dkt. 45-6); Ex. 7 to Giuffra Decl. (Dkt 45-7).) Defendant Margulies responded with letters stating that "the property would not be returned because all of the property demanded was seized pursuant to court-authorized search warrants that were issued as part of an active and ongoing criminal investigation." (Compl. ¶ 125; *see also* Ex. 8 to Giuffra Decl. (Dkt 45-8); Ex. 9 to Giuffra Decl. (Dkt. 45-9).) Plaintiffs also filed notices of claims with the Nassau County Attorney on December 14, 2022, (Ex. 10 to Giuffra Decl. ("1st Notice of Claim") (Dkt. 45-10); Ex. 11 to Giuffra Decl. ("2nd Notice of Claim") (Dkt. 45-11)), and a supplemental notice of claim on March 13, 2023. (Ex. 12 to Giuffra Decl. ("3rd Notice of Claim") (Dkt. 45-12).)

Plaintiffs allege that they have, over the last several months, suffered numerous injuries. For one, Stillwater informed Ace Auto that it was immediately ceasing their business together due to negative press about the criminal investigation. (Compl. ¶ 114.) Second, some of the materials seized actually belonged to other companies and were in the possession of Ace Auto as assayer/broker, and now Plaintiffs owe these companies significant money. (*Id.* ¶¶120-21.) Third, "the materials taken from Plaintiffs have gone down in value, as the markets for

palladium, platinum, and rhodium (the precious metals found in catalytic converters) have all significantly dropped" and therefore irreversible losses have accrued. (*Id.* ¶¶ 127-128.)

On June 1, 2023, the Nassau County DA brought a separate civil forfeiture proceeding against Plaintiffs, as well as against Plaintiff Pawelsky's brother, Andrew, and Andrew's company. (Defs' Supp. Opp. at 10; Ex. 17 to Giuffra Decl. (Dkt. 45-17) at ECF 1-2.) Defendants have forensically imaged Plaintiffs' phones and computer and returned these items, but have not returned the iPad[4] or, according to Plaintiffs, provided copies of the business records taken. (Ps' Supp. Brief at 3 n.3.; Defs' Supp. Opp. at 10, 10 n.7; Tobin Decl. ¶ 5.)

### B.  Procedural History

On April 28, 2023, Plaintiffs Alan Pawelsky and Ace Auto filed a Complaint against the County of Nassau, the Nassau County DA's Office, NCPD, NCPD Property Clerk, Detective James Tobin (individually and in his official capacity), District Attorney Anne Donnelly (individually and in her official capacity), Assistant District Attorney Abigail Margulies (individually and in her official capacity), County Executive Bruce Blakeman (individually and in his official capacity), Nassau County Police Commissioner Patrick Ryder (individually and in his official capacity), and numerous John Doe Nassau County police officers/detective investigators. (Compl. at 1.)

One week later, on May 5, 2023, Plaintiffs filed an order to show cause seeking a temporary restraining order and a preliminary injunction. (*See* Unsigned Order to Show Cause; Initial Decl.; Initial Mem. of Law.) The court then set a show cause hearing for May 15, 2023. (Dkt. 12.) Defendants filed an opposition brief

---

[4] Defendants assert that because the iPad is encrypted, Defendants have thus far been unable to "copy its contents." (Defs' Supp. Opp. at 10 n.7.)

to Plaintiffs' order to show cause on May 12, 2023. (Initial Opp. (Dkt. 37).)

Three days before the order to show cause hearing on May 15, 2023, Plaintiffs informed the court that a grand jury in Nassau County had indicted Pawelsky, and a warrant had been issued for his arrest. (Ps' May 12, 2023 Ltr. (Dkt. 38) at 1.) On May 14, 2023, Defendants filed a letter in response, providing the court with additional information regarding the Nassau County Grand Jury indictment for 69 counts of criminal possession of stolen property, money laundering, and conspiracy that was handed down, and informing the court that the Grand Jury had been hearing evidence and testimony in this case since March 2, 2023. (Defs' May 14, 2023 Ltr. (Dkt. 39) at 1.)

At the May 15, 2023 hearing, the court DENIED the request for a temporary restraining order but gave the parties leave to file additional briefing on whether preliminary injunctive relief should be granted. (May 15, 2023 Minute Entry.) Plaintiffs filed their additional briefing on May 26, 2023. (*See* Ps' Supp. Brief.) Defendants responded on June 2, 2023. (Defs' Supp. Opp.; Giuffra Decl. (Dkt. 45); Margulies Decl. (Dkt. 46); Tobin Decl.) Plaintiffs submitted an additional reply thereafter. (Ps' Reply (Dkt 48).)

Two parties have also moved for leave to intervene. On May 25, 2023, Plakos filed a letter motion for leave to intervene. (Plakos Mot.) On June 13, 2023, C&R Auto Motors and Recycling Inc. similarly sought leave to intervene. (C&R Mot.)[5] Finally, on June 29, 2023, Defendants filed a letter requesting a pre-motion conference for Defendants' anticipated motion to stay proceedings or, in the alternative, to dismiss the complaint. (PMC

---

[5] C&R's motion for leave to intervene appears to have been incorrectly filed as an *amicus curiae* appearance. It is actually styled as a letter motion and this court construes it as such.

Ltr.) On July 13, Plaintiffs wrote to oppose this request. (Opp. to PMC Ltr. (Dkt. 56).)

## II.  LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[6] Preliminary injunctive relief is a "matter of equitable discretion" which "does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018). In sum, it is "an extraordinary remedy never awarded as of right." *Id.* at 1943; *see also Whole Woman's Health v. Jackson*, 141 S. Ct. 2494-95 (2021) ("To prevail in an application for a stay or an injunction, an applicant must carry the burden of making a strong showing[.]").

A federal court must abstain under *Younger*, however, when to do otherwise would be to "tak[e] jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). This doctrine, *Younger* abstention, "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." *Schlagler v Phillips*, 166 F.3d 439, 442 (2d Cir. 1999). The three conditions for abstention under *Younger* are as follows: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal

---

[6] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198. Federal courts decline to exercise jurisdiction under *Younger* in three "exceptional categories of cases," (1) ongoing state criminal proceedings, (2) certain civil enforcement proceedings, and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019) (citing *Sprint Commc'ns Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). The doctrine is, however, subject to exceptions, "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction," *Diamond "D" Const. Corp.*, 282 F.3d at 198, and where "'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it[.]" *Id.* at 201.

## III. DISCUSSION

### A. *Younger* Abstention

#### 1. Ongoing State Proceeding

Defendants argue that the first factor of the abstention analysis is met because there is an ongoing state criminal proceeding. (Defs' Supp. Opp. at 12-14.) Plaintiffs contend, to the contrary, that the "ongoing state proceeding" requirement for *Younger* abstention has not been satisfied because the state criminal indictment had not yet been filed when this suit was initiated. (Ps' Supp. Brief at 7-9.) This court finds that the requirement has been satisfied.

Circuits are split on the issue of whether *Younger* abstention applies in the pre-indictment stages of a criminal proceeding. *Compare Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519-21 (5th Cir. 2004) (finding a grand jury to be an ongoing state proceeding); *Craig v. Barney*, 678 F.2d 1200, 1201-02 (4th Cir. 1982)

1982) (applying *Younger* where the plaintiff was the subject of an ongoing grand jury proceeding and had received subpoenas); *Kaylor v. Fields*, 661 F.2d 1177, 1182 (8th Cir. 1981) (noting that reception of a subpoena triggered *Younger*) with *Monaghan v. Deakins*, 798 F .2d 632, 637 (3d Cir. 1986) ("*Younger* abstention is appropriate only when there is pending a proceeding in which a state court will have the authority to adjudicate the merits of a federal plaintiff's federal claims."). The Second Circuit has yet to weigh in directly on this debate. Given the opportunity to do so in *Trump v. Vance*, where the District Court had abstained under *Younger* after an extensive analysis on this very point, *see* 395 F. Supp. 3d 283, 293-295 (S.D.N.Y. Oct. 7, 2019), the Circuit reversed on different grounds—invoking the seldom-used "extraordinary circumstances" exception to *Younger* rooted in the specific federal interests at stake implicated by the criminal investigation of a sitting President. 941 F.3d 631, 639 (2d Cir. 2019) ("Because *Younger's* policy of comity cannot be vindicated in light of the state-federal clash before us, and because the President raises novel and serious claims that are more appropriately adjudicated in federal court, we conclude that abstention does not extend to the circumstances of this case.").

In the absence of controlling law from the Circuit, the court turns to its fellow district courts for guidance. In the 2007 Southern District of New York case *Mirka United, Inc. v. Cuomo,* then-District Court Judge Lynch conducted a fulsome and persuasive analysis of this issue, drawing heavily on Judge Sweet's analysis in *Nick v. Abrams*, 717 F. Supp. 1053 (S.D.N.Y. 1989). *See* No. 06-CV-14292 (GEL), 2007 WL 4225487, at *3 (S.D.N.Y. Nov. 27, 2007). Turning to New York law, the *Mirka* court determined that "judicial authorization of a search warrant is part of a criminal proceeding because it occurs in a criminal court and is related to a prospective criminal action or involves a criminal investigation." *Id.* (citing N.Y. Crim. Proc. L. §§ 1.20(18)(b), 690.05.) The court is persuaded by this argument and finds that

*Younger's* ongoing state criminal proceeding requirement is satisfied where warrants have been issued. Here, not only had the warrants long been issued when the Complaint was filed, but a grand jury had already met three times—March 2, 2023, March 9, 2023, and March 30, 2023—to hear "evidence and testimony concerning Pawelsky[.]" (Margulies Decl. ¶ 6.)[7]

Moreover, an indictment *was* filed in a state criminal proceeding "before any proceedings of substance on the merits [had] taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *see also Hawaii Hous. Author. v. Midkiff*, 467 U.S. 229, 238 (1984) (holding that abstention is required only where a criminal proceeding commences before the federal action has proceeded "beyond the embryonic stage"). Even if the issuances of wire taps, subpoenas, and so forth did not constitute the initiation of a criminal proceeding, it remains true that the grand jury began meeting on March 2, 2023, and the indictment was issued prior to resolution of any merits issues in this case. The instant case was therefore, at the time the indictment was handed down, definitionally embryonic.

The court thus finds that there is an ongoing state criminal proceeding for the purposes of *Younger*.

### 2. Important State Interest

No party contests that an important state interest—the investigation and prosecution of a criminal case regarding

---

[7] The court's conclusion is further bolstered by policy considerations. As Defendants have correctly pointed out, a holding that a court "may abstain only if a federal lawsuit is filed after an indictment is issued would lead to absurd outcomes." (Defs' Supp. Opp. at 13.) Such a holding could create an untenable cycle whereby those who are the subject of seizures by state and local law enforcement could regularly file constitutional challenges to those seizures in federal court while state or local prosecutors are preparing to file charges.

allegations of large-scale catalytic converter theft—is at play. (*See generally* Ps' Supp. Brief; Defs' Supp. Opp.)

### 3.   Adequate Opportunity for Judicial Review

First, Plaintiffs argue that a specific retention hearing is required under *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), and that the existing opportunities for judicial review in state court do not account for such a right. (Ps' Supp. Brief at 8-10 ("Plaintiffs' due process rights to a hearing to contest the continued retention of the business assets seized over five (5) months ago – will never be addressed in the state criminal proceedings.").) The court views this assertion as without merit. The facts at bar can be distinguished from those in *Krimstock*, where no pre-seizure due process had been afforded through a warrant request. *Krimstock*, 306 F.3d at 48. Any potential due process violation here, where a warrant was allegedly validly issued, must be considered in the context of the existing warrant. *Grant v. Am. Soc'y for the Prevention of Cruelty to Animals*, No. 16 CIV. 2765 (ER), 2017 WL 1229737, at *3 n.4 (S.D.N.Y. Mar. 31, 2017) ("The Court can find no law to support extending the Second Circuit's ruling regarding the warrantless seizure of cars to include property seized pursuant to a warrant, and Plaintiff has not cited to any cases holding that a Krimstock hearing would be appropriate. Courts have been reluctant to extend the reasoning in Krimstock to cases outside the scope of the original set of facts.").

The other cases Plaintiffs cite to argue that their claims for relief cannot be redressed through the ongoing state prosecutions, (*see* Initial Mem of Law at 10-11; Ps' Supp. Brief at 13-14), are similarly inapposite as they too pertain to deprivations where no process had been afforded *ex ante*. *See Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009); *Nnebe v. Daus*, 931 F.3d 66, 70 (2d Cir. 2019); *Boyle v. Cnty. Of Suffolk*, No. 10-CV-3606 (JS) (ARL), 2010 WL 4340627, at *1 (E.D.N.Y. Oct. 19, 2010).

Next, Plaintiffs rely heavily on the Supreme Court case *Gerstein v. Pugh*, 420 U.S. 103 (1975) and its progeny. (Ps' Supp. Brief at 8.) The case at bar is distinguishable from the facts in *Gerstein*, where the Supreme Court upheld a district court ruling that a state criminal proceeding did not constitute an adequate opportunity to obtain relief where the "legality of pretrial detention without a judicial hearing"—the very issue in question in the federal case—was not an available defense in the criminal proceeding. 420 U.S. at 108 n.9.[8]

The court notes as an initial matter that Plaintiffs' descriptions of their claims, as well as of the relief they are seeking, have shapeshifted over the course of filings and court appearances to date. In their initial filings seeking an order to show cause and preliminary injunction, Plaintiffs, to the best of this court's understanding, sought the immediate return of all seized property on the basis that "raid[ing] Plaintiffs' home and place of business" without "charg[ing] Pawelsky with a single crime of offense" and "refus[ing] to return the property or provide any basis or justification for the continued seizure," had violated Plaintiffs' due process rights. (Initial Mem. of Law at 11-12.) That initial briefing focused substantially on the lack of arrest or indictment. (*See id.* at 11 n. 3 ("Plaintiff[s] could, at a minimum, challenge the lawfulness of the seizure in criminal court if there was an accompanying criminal case."), 13 ("Plaintiffs have not even been charged with a crime, let alone a misdemeanor[.]").) The due process violations alleged were portrayed as part and parcel of the ongoing criminal investigation. (*Id.* at 11.) Plaintiffs argued that "[b]ecause Plaintiff [Pawelsky] was neither arrested nor charged with any offense, there is no proceeding pending or

---

[8] Similarly, in another case invoked by Plaintiffs, *Hirschfield v. Stone*, 193 F.R.D. 175, 188-89 (S.D.N.Y 2000), the court declined to abstain under *Younger* where the challenge in federal court was utterly "ancillary to the merit of the prosecution" in state court.

magistrate before whom Plaintiff could challenge Defendants' acts or weigh Defendants' interests against Plaintiffs' property rights." (*Id.*) "Indeed, if Defendants had arrested Plaintiff, the Due Process clause ... requires the seizing authority to have a judge promptly" assess probable cause, likelihood of success in a forfeiture action, and necessity of continued impoundment. (*Id.*)[9]

By the time the order to show cause hearing took place on May 15, 2022, Pawelsky had been indicted by a grand jury and arrested in Nassau County.[10] (Ps' May 12, 2023 Ltr. at 1.) This precipitated a change in the framing of Plaintiffs' arguments. (*See* May 5, 2023 Tr. (Dkt. 43) at 16-17, 22; Ps' Supp. Brief at 1, 19.) At the May 15 hearing, Plaintiffs alleged procedural due process violations *unrelated* to the now-ongoing criminal proceeding. Indeed, Plaintiffs now argue "[d]ue process requires a hearing to assess the propriety of Defendants' continued retention of Plaintiffs' property," and that the issue of this retention is a due process question entirely distinct from the ongoing criminal proceeding. (Ps' Supp. Brief at 18.) As discussed above, however, this reframing is plainly belied by the Plaintiffs' own opening Memorandum of Law. (Initial Mem. of Law at 11-12.)

Moreover, the claims before this court pertain, at their core, to whether a state improperly executed a warrant in seizing property as part of a criminal investigation. The questions of whether certain items seized were beyond the scope of the warrant or

---

[9] The Plaintiffs' Memorandum of Law also included an offhand remark about a potential "taking of Plaintiff's business." (Initial Mem. of Law at 15.)

[10] Although the corporate plaintiff Ace Auto was not indicted and arrested, its rights can be vindicated through any opportunities for redress available to individual plaintiff Pawelsky, its sole shareholder. *See, e.g., Mirka,* 2007 WL 4225487, at *6 ("Kagan, the president and sole shareholder of Mirka, will have an adequate opportunity to vindicate his own *and his company's* constitutional rights through a motion to suppress the evidence in the criminal prosecution") (emphasis added).

warrant or there was improper retention of the seized items are inextricably linked to the propriety of the warrant's execution and are best dealt with in the context of the criminal proceeding for which the warrant was issued. Specifically, Plaintiffs may move in state court to challenge the warrant's validity and for suppression of the fruits of the warrant in question. *See* N.Y. Crim. Proc. L. §§ 710.10, 710.20(1). When a New York state court grants a motion to suppress, it is required to enter an order excluding "the evidence in question" from "the criminal action pending against the defendant." *Id.* §710.70. If that order "excludes tangible property unlawfully taken from the defendant's possession" through an improper or improperly executed search or seizure[11] and "such property is not otherwise subject to lawful retention, the court may, upon request of the defendant, further order that such property be restored to him." *Id.* In other words, Plaintiffs may challenge the seizure and retention of and seek return of the property in question as part of a suppression hearing in state court. *See Best v. Monaco*, No. 09-CV-05260 (NGG), 2010 WL 1438756, at *2 (E.D.N.Y. Apr. 5, 2010) (In New York state court, "[i]f a criminal defendant successfully moves to suppress unlawfully seized property, the suppression court may, upon the defendant's request, order that the seized property be returned to him or her"). The ongoing civil forfeiture proceeding in state court also provides a forum for judicial review of Nassau County's continued retention of certain

---

[11] The New York Court of Appeals has, without making an ultimate decision on the issue, expressed willingness to entertain claims that "illegal retention of property by the state subsequent to an initial lawful seizure" may violate the Fourth Amendment where "a continuing 'seizure' [] at some point subsequent to its inception lost its justifying predicate." *People v. DeProspero*, 20 N.Y.3d 527, 530 (2013). Plaintiffs would thus be within their rights to make an argument in a state court suppression hearing that a seizure warrant was improperly executed where materials seized pursuant to a lawful warrant were not promptly reviewed or were retained over too long a period without continued justification.

of Plaintiffs' property. (*See* Ex. 17 to Giuffra Decl. (Dkt. 45-17).)
Plaintiffs are participating in this process and remain free to
oppose forfeiture in that context.[12] Plaintiffs have also been
submitting claims in state court for the return of their property.
(*See* 1st Notice of Claim; 2nd Notice of Claim; 3rd Notice of
Claim; Ex. 14 to Giuffra Decl. ("4th Notice of Claim") (Dkt. 45-
14).) Plaintiff Pawelsky is scheduled to submit testimony on
these claims next month, providing yet another potential
opportunity for redress. (Ex. 15 to Giuffra Decl. (Dkt. 45-15).)
For other property, Plaintiffs' phones and computer, a core
remedy sought by the Plaintiffs as injunctive relief—the return of
property—is now moot, as the property has already been
returned. (*See* Defs' Supp. Opp. at 10.)[13]

For these reasons, reaching the merits of the preliminary
injunction request at this time would be "to interfere with a
pending state prosecution." *Kugler*, 421 U.S. at 123. This court
declines to engage in such an intervention.

### 4.  Bad Faith

Plaintiffs maintain that even if *Younger* abstention would
otherwise be warranted, the court should decline to abstain
under the bad faith exception. (Ps' Supp. Brief at 16-18.) To be
sure, "where it is clear that the *Younger* doctrine should apply, a
court may still enjoin the state proceeding if the evidence
demonstrates that the administrative proceedings have been

---

[12] Plaintiffs argue that because this proceeding will be stayed during the
pendency of the criminal case, it does not offer an opportunity for redress.
(Ps' Reply at 2.) To the contrary, this likely stay further supports the idea
that other proceedings related to the seized property should cease during
the period in which such property may still be needed as evidence in the
criminal proceeding.

[13] Plaintiffs may also choose to pursue either a CPLR Article 78 proceeding
or an action for replevin to review any and all refusals of their demands
for return of property. *See Best*, 2010 WL 1438756, at *2 (E.D.N.Y. Apr. 5,
2010) (citing *Boyle v. Kelly*, 42 N.Y.2d 88, 91 (1977)).

conducted in bad faith or with the intent to harass the affected party." *Mir v. Shah,* No. 11-CV-5211 (BSJ) (KNF), 2012 WL 6097770, at *3 (S.D.N.Y. Dec. 4, 2012). Here, however, the allegations of conduct evincing bad faith are uniformly conclusory. For instance, Plaintiffs assert that "Defendants strategically maneuvered Pawelsky's arraignment in order to forum shop," but provide no evidence whatsoever of this "strategic[] maneuver[ing]." (*Id.* at 17.) Plaintiffs also make great hay of the fact that Pawelsky "remained in jail the entire weekend and had to miss the initial hearing in this case," calling it a "clear act of retaliation and veiled threat not to pursue this action to enforce his rights." (*Id.* at 18.) But there is no requirement in this court that plaintiffs be present for status conferences. Indeed, lawyers regularly handle such matters for their clients, and no prejudice ensues. Familiar as Nassau County most certainly is with federal litigation in the Eastern District of New York, it stretches credulity to argue that they would have manipulated the bail process to prevent Pawelsky from attending a hearing at which his presence was neither needed nor expected as a means of harassing Plaintiffs. Bad faith thus does not prevent the operation of *Younger* abstention.

> 5.   Other Equitable Considerations

In assessing whether to abstain under *Younger,* courts also weigh equitable considerations. In *Trump v. Vance,* for instance the Circuit invoked its equitable powers to determine that the "President['s] [] novel and serious claims" would be "more appropriately adjudicated in federal court." 941 F.3d at 639. Unlike *Trump,* however, this case has not been brought by the President, and does not require a first-impression analysis of a sitting President's claim for immunity. *Id.* at 638-39. To the contrary, the facts here are hyperlocal and the court is wholly sympathetic to local officials' interest in prosecuting a major

6.   Abstention & Injunctive Relief

For the reasons set forth above, this court abstains under *Younger* and does not reach the issue of the preliminary injunction, as well as the related issues of Plaintiffs' likelihood of success on the merits, the potential for Plaintiffs to suffer irreparable harm in the absence of preliminary relief, the balance of equities, and whether an injunction would be in the public interest. *Winter*, 555 U.S. at 20.

**B.   Motions to Intervene**

1.   Legal Framework

The Federal Rules of Civil Procedure provide for two types of intervention into an ongoing lawsuit—(1) intervention as of right, and (2) permissive intervention, so long as the motion to intervene is timely brought. Fed. R. Civ. P. 24(a)-(b). Leave to intervene must be granted as of right where the proposed intervenor (1) "is given an unconditional right to intervene by a federal statute" or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.* at 24(a). Courts may also permit intervention where a party (1) has been given a "conditional right to intervene by a federal statute" or (2) "has a claim or defense that shares with the main action a common question of law or fact." *Id.* at 24(b)(1). In either instance, a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." *Id.* at 24(c).

In the Second Circuit, "[i]n order to intervene as of right under Fed. R. Civ. P. 24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and

19

application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992). Timeliness under Rule 24 is determined based on factors including "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes*, 25 F.3d 66, 70 (2d Cir. 1994). This timeliness assessment must be "evaluated against the totality of the circumstances before the court." *D'amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). Permissive intervention is at the discretion of the trial court, though courts in this Circuit must, in exercising that discretion, "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," as well as "the nature and extent of the intervenors' interests," whether "those interests are adequately represented by other parties," and whether allowing the intervention will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986).

2. Analysis

As an initial matter, both Plakos and C&R have timely brought their motions for leave to intervene, when considered in relation to the factors set forth in *Pitney Bowes* and "the totality of the circumstances before the court," *D'amato*, 236 F.3d at 84. (*See* Plakos Mot.; C&R Mot.) Nonetheless, neither putative intervenor has sufficiently set forth "an interest relating to the property or transaction that is the subject of the action" that is "direct,

and C&R allege, in sum and substance, that Ace Auto owes them money. (Plakos Mot. at 1; C&R Mot. at 1.) They further allege, that because the catalytic converters for which Ace Auto owes them that money were obtained through wholly legal means, NCPD should not have seized the money owed to them by Ace. (Plakos Mot. at 2; C&R Mot. at 2.) These allegations may well be true. Plakos and C&R would both be well within their rights to sue Ace for breach of contract, in an attempt to retrieve the money owed. But their right under contract to collect from Ace Auto is independent of the resolution of the instant case. Thus, both motions for leave to intervene are DENIED.

## IV.  MOTION FOR A PRE-MOTION CONFERENCE

The Defendants have moved for a pre-motion conference in anticipation of moving to stay the proceedings or in the alternative dismiss the action. (PMC Ltr. at 1.) Defendants' motion for a pre-motion conference is DENIED with leave to renew. Historically, *Younger* abstention doctrine has pertained to claims for injunctive relief. *See Younger*, 401 U.S. at 53. The Second Circuit has held that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). In the instant case, to move forward with Plaintiffs' claims for monetary damages would "place [this court] in the awkward position of having to question the validity of the underlying state proceedings," *Chapdelaine v. Desjardin*, No. 20-CV-779 (MPS), 2022 WL 4448890, at *13 (D. Conn. Sept. 23, 2022), while they are ongoing, and the issues involved may well be resolved as those proceedings go forward. In light of the Second Circuit's precedent and the practicalities of the situation before the court, Plaintiffs'

claims for monetary relief are STAYED. The case will be administratively closed with leave to reopen at the conclusion of the underlying state proceedings if the issues contained herein have not been adequately addressed. Thus, Defendants' request for a pre-motion conference is DENIED with leave to renew if and when the case is reopened in this court.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' emergency request for a preliminary injunction is DENIED as this court ABSTAINS from intervention in accordance with the *Younger* abstention doctrine. Plakos's Motion for Leave to Intervene and C&R's Motion for Leave to Intervene are DENIED. Plaintiff's claims for monetary relief are STAYED. The Clerk of Court is respectfully DIRECTED to administratively close the case. Plaintiffs may request to reopen the case at the conclusion of the underlying state proceedings if necessary. Defendants' Motion for a Pre-Motion Conference is DENIED with leave to renew if and when the case is reopened in this court.

SO ORDERED.

Dated:   Brooklyn, New York
         July 28, 2023

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge